John David PITRONE

v.

**Police Officer Louis J. MERCADANTE et al.**

Civ. No. 75–2455.

United States District Court,
E. D. Pennsylvania.

Sept. 30, 1976.

H. Lee Weinrebe, Philadelphia, Pa., for plaintiff.

Henry J. Horstmann, Philadelphia, Pa., for Township of Warminster.

Elliot M. Drexler, Warminster, Pa., for defendants.

## OPINION

DITTER, District Judge.

### I. Introduction and Factual Background

Plaintiff filed this civil rights action against the Township of Warminster, Pennsylvania, its chief of police and various named and unnamed police officers, alleging their responsibility for his unconstitutional arrest, detention and beating. The complaint, as amended, rests on 42 U.S.C. § 1983 and the Fourth and Eighth Amendments as applied to the states through the Fourteenth Amendment, with this court's jurisdiction based on 28 U.S.C. § 1343(3) & (4) as to the individual defendants and 28 U.S.C. § 1331 as to the township. Plaintiff also seeks to invoke this court's pendent jurisdiction over various state law claims against these defendants. Presently before the court are motions on behalf of all the defendants, pursuant to Rule 12(b)(1) and (6), to dismiss the complaint for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted.

The essence of the complaint against Louis J. Mercadante, a Warminster Township police officer, is that he violated Pitrone's federally protected rights by an unjustifiable arrest and physical abuse. The allegations against defendants Thomas McMahon, John Langdon, and certain unidentified Warminster police officers are that they observed Mercadante beating plaintiff, took no action to stop the beating, and, in fact, encouraged Mercadante to continue.

The Township's and Police Chief Kelley's liability is premised on the allegation that they either knew or had reason to know on the basis of prior complaints to both Kelley's office and the Federal Bureau of Investigation that the officers involved in this incident were prone to act with "excessive force and zeal . . . [and] would so act upon even the slightest provocation."[1] In addition, the complaint also seems to base the township's liability on theories of negligence (in failing to establish and enforce guidelines for the use of deadly force)[2] and respondeat superior.[3]

Plaintiff seeks costs, injunctive relief against the township[4] and compensatory and punitive damages against all the defendants.

---

1. Complaint, paragraph 28.

2. At this juncture I accept the allegation, implicit in this theory of liability, that plaintiff's injury resulted from the use of "deadly" force, although I note that the complaint makes no mention of the instruments with which Pitrone was allegedly beaten.

3. In the state law count of his complaint, Pitrone charges Mercadante, McMahon, Langdon and the unidentified officers with assault and battery; McMahon, Langdon and the others with negligence in failing to restrain Mercadante; Kelley with negligence in failing to prevent these officers from using excessive force when he knew or had reason to know of their violent propensities; and the township with negligence in hiring and retaining Kelley who was not qualified as a police administrator and in retaining the other officers after it knew or should have known of their violent propensities.

4. The equitable relief prayed for is that the court

> direct the defendant . . . [township] to make appropriate determinations whether or not the defendants hereto are suitable to be retained as policemen within the Township of Warminster, and to alter and change the present . . . internal complaint system.

Complaint (prayer for relief) paragraph 5. To the extent that the complaint can be construed as alleging that the violations of *plaintiff's* rights in *fact* resulted from inadequate internal complaint procedures and assuming other jurisdictional requirements to be met, Pitrone would have standing to challenge these inadequacies as a basis for monetary relief. *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). However, within the perimeters of the instant suit it appears extremely unlikely that plaintiff will be able to obtain the type of equitable relief he seeks above. See *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

## II. The Individual Defendants

The primary thrust of the individual defendants' arguments in support of their motion to dismiss both on the grounds of lack of subject matter jurisdiction and failure to state a claim is that the complaint lacks sufficient specificity. There is no question that "in this circuit, plaintiffs in civil rights cases are required to plead facts with specificity," *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976), and that broad conclusory allegations of constitutional deprivations will not suffice. *Kauffman v. Moss*, 420 F.2d 1270, 1275–76 (3d Cir.) cert. denied 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967). However, when tested by the specificity requirement imposed by the *Rotolo-Kaufman-Negrich* line of cases, the complaint herein easily passes muster against Mercadante, Langdon, McMahon, Kelley and the unidentified officers at the scene of the altercation.[5]

Kelley makes the additional argument that his liability cannot be predicated on the doctrine of respondeat superior. I agree. *Milton v. Nelson*, 527 F.2d 1158 (9th Cir. 1976); *Bracey v. Grenoble*, 494 F.2d 566 (3d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.) cert. denied sub nom. *Employee-Officer John, # 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Padover v. Gimbel Brothers, Inc.*, 412 F.Supp. 920 (E.D.Pa. 1976). But the complaint here asserts that Kelley knew or had reason to know beforehand of the violent propensities and overzealousness of the officers involved in this incident, yet took no remedial action. This is a sufficient allegation of personal culpability on Kelley's part to withstand a motion to dismiss. Compare *Bracey v. Grenoble*, supra, 494 F.2d at 571; *Curtiss v. Everette*, 489 F.2d 516, 521 (3d Cir. 1973), cert. denied sub nom. *Smith v. Curtio*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); and *Johnson v. Glick*, supra, 481 F.2d at 1034 with *Wright v. McMann*, 460 F.2d 126, 134–35 (2d Cir.), cert. denied 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972), and *Noon v. Winfield*, 368 F.Supp. 843, 844–45 (N.D.Ill.1973); see also Judge Huyett's excellent discussion of the personal involvement issue in *Fialkowski v. Shapp*, 405 F.Supp. 946, 949–54 (E.D.Pa.1975).

## III. Warminster Township

It is also clear that the motion to dismiss on behalf of Warminster Township must be granted insofar as the complaint is based on Section 1983 since the township is not a "person" within the meaning of that statute. *City of Kenosha v. Bruno*, 412 U.S. 511, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). However, jurisdiction over the township is also asserted under the general federal question statute, 28 U.S.C. § 1331, and since the requisite amount in controversy has been alleged,[6] I must face the merits of this contention.

Two questions are involved: (1) Is there jurisdiction over the municipality pursuant to Section 1331? and (2) Does the complaint state a cause of action? The notion that a civil rights action may be maintained against a municipality in federal court pursuant to 28 U.S.C. § 1331 despite the fact

---

5. The allegations that McMahon, Langdon and the other officers on the scene encouraged Mercadante to continue with the beating of Pitrone or at least failed to protect the latter from the officer would, if proved at trial, be sufficient to subject them to Section 1983 liability. See *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *Vun Cannon v. Breed*, 391 F.Supp. 1371, 1374 (N.D.Cal.1975); cf. *Howell v. Cataldi*, 464 F.2d 272, 282 (3d Cir. 1972).

6. The complaint seeks compensatory damages of $5,000. and punitive damages of $10,000. against the township. Punitive damages are recoverable under certain circumstances in civil rights cases. *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir. 1974); *Fisher v. Volz*, 496 F.2d 333, 346–48 (3d Cir. 1974); and since at this stage of the proceedings it is not clear to a legal certainty that plaintiff, if otherwise entitled to recover, would not be entitled to punitive damages of at least $5,000., I conclude that the requisite jurisdictional amount has been satisfied with respect to the claim against the township.

that the municipality is not a "person" within the meaning of 42 U.S.C. § 1983, seems to have stemmed from certain dicta in *City of Kenosha v. Bruno*, supra. In that case, after holding that a municipality is not a "person" for Section 1983 purposes regardless of the nature of the relief sought, the Supreme Court noted that the complaint had also asserted jurisdiction under 28 U.S.C. § 1331. Since the lower court had not determined whether jurisdiction over the municipalities was properly laid under Section 1331, the court merely remanded the case to the district court for consideration of that issue, without in any way intimating what the appropriate disposition should be.[7]

■ Drawing from this relatively benign language,[8] several federal courts have ruled that municipalities may not be dismissed from civil rights cases where Section 1331 is pleaded as a basis of jurisdiction. E. g., *Brault v. Town of Milton*, 527 F.2d 730, 734 (2d Cir. 1975) (panel) rev'd on other grounds on reconsideration en banc, *id.* at 736; *Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 44 (3d Cir. 1974) vacated, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975) on remand opinion filed June 21, 1976 (en banc); *Patterson v. City of Chester*, 389 F.Supp. 1093, 1095–96 (E.D. Pa.1975); *Maybanks v. Ingraham*, 378

F.Supp. 913, 914–15 (E.D.Pa.1974); *Dahl v. City of Palo Alto*, supra, 372 F.Supp. at 649–51; see *Rotolo v. Borough of Charleroi*, supra, 532 F.2d at 922; *United Farmworkers of Florida Housing Project, Inc. v. City of Delray Beach*, 493 F.2d 799, 801–02 (5th Cir. 1974).[9] In one sense, of course, these decisions are clearly correct; that is, given the requisite amount in controversy and a complaint alleging a claim "arising under, *inter alia*, the Constitution," Section 1331 by its terms grants the district courts *jurisdiction* over a municipality or anybody else. *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); see *Brault v. Town of Milton*, supra, 527 F.2d at 736 n. 1. But Section 1331 is merely a jurisdictional statute and provides no substantive basis for relief. See *Gresham v. City of Chicago*, 405 F.Supp. 410, 412 (N.D.Ill.1975); *Jamison v. McCurrie*, 388 F.Supp. 990, 991–92 (N.D.Ill. 1975); *Perry v. Linke*, 394 F.Supp. 323, 325 (N.D.Ohio 1974).

Because the township is not a person for Section 1983 purposes the only possible substantive basis for relief against it would be through the implication of a private cause of action directly from the Fourteenth Amendment. Few of the cases cited above, and, in particular, none emanating from the Court of Appeals for this Circuit, have specifically addressed the Fourteenth Amendment cause of action question.[10] Cf. *Roach*

7. In relevant part, the Court stated:
   We have had the benefit of neither briefs, arguments, nor explicit consideration by the District Court of . . . the availability of §1331 jurisdiction in view of the state of the record below. We therefore remand the case to the District Court for consideration of these issues.
   412 U.S. at 514, 93 S.Ct. at 2227.

8. I disagree with the court's statement in *Dahl v. City of Palo Alto*, 372 F.Supp. 647, 650 (N.D. Cal.1974) that ". . . the only fair reading of the opinion is that the Court [in *Kenosha*] assumed that had the amount in controversy requirement been met, jurisdiction would lie [against the city]." Only the concurring opinion of Justice Brennan, joined in by Justice Marshall, made such an assumption.

9. See also *Hostrop v. Board of Junior College District Number 515*, 523 F.2d 569 (7th Cir. 1975), cert. denied, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Hanna v. Drobneck*, 514 F.2d 393 (6th Cir. 1975); *Adkins v.*

*Duval County School Board*, 511 F.2d 690 (5th Cir. 1975); *Clark v. Illinois*, 415 F.Supp. 149 (N.D.Ill.1976); *Marvasi v. Shorty*, 70 F.R.D. 14 (E.D.Pa.1976); *Barszca v. Board of Trustees*, 400 F.Supp. 675 (N.D.Ill.1975); *Devore v. Edgefield County School District*, 68 F.R.D. 423 (D.S.C.1975); *Everette v. City of Chester*, 391 F.Supp. 26 (E.D.Pa.1975); *Peacock v. Board of Regents*, 380 F.Supp. 1081 (D.Ariz.1974), aff'd 510 F.2d 1324 (9th Cir.), cert. denied, 422 U.S. 1049, 95 S.Ct. 2668, 45 L.Ed.2d 701 (1975); *Hines v. D'Artors*, 383 F.Supp. 184 (W.D.La. 1974); *Waltenberg v. New York Dept. of Corrections*, 376 F.Supp. 41 (S.D.N.Y.1974); *Moore v. City of Green Bay*, 372 F.Supp. 40 (E.D.Wisc.1974).

10. I recognize that certain language in *Skehan*, supra, may be interpreted as implying that there can be a direct Fourteenth Amendment cause of action against municipalities; however, I do not so read that case. Rather, I believe that a proper interpretation of this aspect of *Skehan* is merely that a nonfrivolous

*v. Klugman,* 412 F.Supp. 521, at 528–529 (E.D.1976). Most of those courts which have considered the question and concluded that the Fourteenth Amendment provides a private cause action against municipalities based their holdings on *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See *Brault, Patterson,* and *Maybanks,* supra. With deference to these courts, I do not believe that the rationale of *Bivens* can be extended to support a cause of action against a municipality based directly on the Fourteenth Amendment.

In *Bivens* the court found a cause of action based on the Fourth Amendment in a situation where, absent the implication of such relief, the plaintiff would have had no federal [11] remedy for the violation of a clearly established federal constitutional right. This anomaly resulted from the combined facts that Section 1983 does not apply to actions under color of *federal* law and that at the time *Bivens* arose, the Federal Tort Claims Act did not provide a remedy against the United States for the wrongful acts of its law enforcement officers.[12] The case for implication of a private cause of action against a municipality under the Fourteenth Amendment is significantly less compelling. See *Graham,* supra, 405 F.Supp. at 412.

First of all, unlike the situation in *Bivens,* the plaintiff here is not without remedy absent the implication of a constitutional cause of action since he unquestionably may seek Section 1983 relief against the individual police officers. A second and more important factor distinguishing this case from *Bivens* is that here Congress has spoken; the legislative history of Section 1983 as described in *Monroe, Moor,* and *Bruno,* supra, makes it clear that Congress did not want municipalities to be subjected to damage suits for civil rights violations. Thus, one of the major underpinnings of *Bivens* is missing. As construed in the Supreme Court cases just cited, Section 1983 amounts to "an explicit congressional declaration that persons injured by a [municipality's] violation of the [Fourteenth Amendment] may not recover money damages against [it]." The fact that in Section 1983 Congress did provide a federal remedy against individuals who commit civil rights violations also seems to satisfy the requirement of "another remedy, equally effective in the view of Congress," which the *Bivens* court indicated would weigh against implying a cause of action directly from the Constitution.[13] 403 U.S. at 397, 91 S.Ct. at 2005. See *Jamison,* supra, 388 F.Supp. at 991–92; *Perry,* supra, 394 F.Supp. at 326.

A third factor weighing against the implication of a Fourteenth Amendment cause of action against municipalities is that where the plaintiff in a conventional civil rights action is merely seeking declaratory or injunctive relief it will generally make little difference whether the named defendant is the governmental entity itself [14] or

assertion of a Fourteenth Amendment violation by a governmental subdivision resulting in damages of over $10,000. gives the district courts *jurisdiction* over the municipality pursuant to Section 1331. See *Bell v. Hood,* supra. Even if *Skehan* were to be interpreted as authorizing a Fourteenth Amendment cause of action against municipalities its continuing validity in light of *Aldinger v. Howard,* —— U.S. ——, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976) would be questionable.

**11.** The *Bivens* Court found inadequate whatever state law tort remedies the plaintiff might have had available. 403 U.S. at 394–95, 91 S.Ct. at 2003–04.

**12.** The Federal Tort Claims Act has since been amended to cover such activities. Act of March 16, 1974, Pub.L. 93–253, § 2, 88 Stat. 50, amending 28 U.S.C. § 2680(h).

**13.** I do not agree with the suggestion that the existence of a direct Fourteenth Amendment

cause of action should depend upon whether the acts upon which the suit is based violate the "specific mandates of the Constitution" or only more general notions of due process. *Clark,* supra, 415 F.Supp. at 152; *Jamison,* supra, 388 F.Supp. at 992. The conflict with Section 1983 remains the same whether the constitutional deprivation be characterized as "general" or "specific".

**14.** Prior to *Kenosha,* it had been held that the Fourteenth Amendment did provide a basis for equitable relief against political subdivisions of states, but not for monetary damages. See e. g., *Bennett v. Gravelle,* 323 F.Supp. 203, 216–18 (D.Md.) aff'd 451 F.2d 1013 (4th Cir. 1971) cert. denied, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972). *Kenosha's* holding that there is no distinction for Section 1983 purposes between equitable and monetary relief undermines the continuing validity of cases such as *Bennett.*

the appropriate governmental official responsible for carrying out the challenged activity.[15] Only where the plaintiff seeks damages does the presence or absence of the municipality in the case make any significant difference. In that situation being able to sue the municipality would usually assure the plaintiff of at least one party capable of satisfying a substantial monetary judgment should he prevail at trial.[16] See *Moor*, supra, 411 U.S. at 700, 93 S.Ct. at 1791. But the possibility of a monetary recovery against the municipality, which is the practical basis for the plaintiff's desire to name it as a defendant, is also the very reason why Congress would not (and indeed believed it could not) include municipalities within Section 1983 and why the Supreme Court in *Monroe v. Pape*, supra, held that Congress could not have intended the word "person" in that statute to encompass municipalities.

In addition to relying on *Bivens*, at least one court has advanced a second rationale in support of a direct Fourteenth Amendment cause of action against municipalities. Drawing from the remarks of Senator Thurmon during the floor debate on Section 1983, the court in *Dahl*,[17] supra, suggested that what Congress was really concerned about in excluding municipalities from Section 1983 was the absence of a required amount in controversy in its jurisdictional counterpart, now 28 U.S.C. § 1343, thus leaving open the possibility that municipalities might be subject to suit in federal court on the most petty of claims. 372 F.Supp. at 651. The problem with this reasoning is that as the Supreme Court pointed out in *Moor*, supra, 411 U.S. at 708, 93 S.Ct. at 1795, the primary reason for excluding mu-

nicipalities from Section 1983 was "legislative concern as to Congress' constitutional power to impose liability on political subdivisions of the States." Whether this concern was justified is not important. *Id.* at 709, 93 S.Ct. at 1795. Rather, the important thing is that Congress' exclusion of municipalities on this basis could not have depended upon the amount of the claim involved.

Furthermore, to the extent that Congress was also concerned that municipalities not be subjected to crushing liabilities which might threaten their very existence, see Note, 89 Harv.L.Rev. 922, 948 & n. 139 (1976), limiting damage suits to those claiming *over* $10,000. would certainly not further the congressional goal.

Finally, there is the Supreme Court's recent decision in *Aldinger v. Howard*, —— U.S. ——, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Although that case did not specifically deal with the question under consideration here,[18] the Court's analysis of the related problem of "pendent party" jurisdiction is instructive. In holding that the district courts may not exercise pendent jurisdiction over a county on a state law claim factually related to a Section 1983 claim against county officials, the court relied heavily on Congress' exclusion of state governmental subdivisions from the reach of that statute.

> [T]he question whether jurisdiction over the instant lawsuit extends not only to a related state law claim, but to the defendant against whom that claim is made, turns initially not on the general contours of the language in Art. III, i. e., "Cases . . . arising under," but upon *the deductions which may be drawn*

---

15. The possibility that there might be more than one official involved in administering a particular program or that normal personnel turnover might result in periodic changes in the identity of the official involved do not alter this conclusion in view of the liberal joinder and substitution of parties provisions of the Federal Rules of Civil Procedure. Neither is there cause for concern that personnel changes might render a court's grant of declaratory or injunctive relief ineffectual since "[this court] would . . . look with some disfavor upon any City official's actions which were incon-

sistent with [its rulings]." *United Farmworkers*, supra, 493 F.2d at 802 n. 3.

16. Plaintiff here frankly admits that this is one of his reasons for naming the municipality as a defendant. See Plaintiff's Answer to the Motion to Dismiss, paragraph 5.

17. See also Judge Smith's opinion for the panel in *Brault*, supra 527 F.2d at 735.

18. —— U.S. at ——, 96 S.Ct. at 2415, n. 3.

*from congressional statutes as to whether Congress wanted to grant this sort of jurisdiction to federal courts.* Parties such as counties, whom Congress *excluded* from liability in § 1983, and therefore by reference in the grant of jurisdiction under § 1343(3), can argue with a great deal of force that the scope of the "civil action" over which the district courts have been given statutory jurisdiction should not be so broadly read as to bring them *back* within that power merely because the facts also give rise to an ordinary civil action against them under state law.

    ·    ·    ·    ·    ·

[W]e think a fair reading of the language used in § 1343, together with the scope of § 1983, requires a holding that the joinder of a municipal corporation . . . for purposes of asserting a state law claim not within federal diversity jurisdiction, is without the statutory jurisdiction of the district court. (footnote omitted).

—— U.S. at ——, 96 S.Ct. at 2421. The Supreme Court's conclusion that "Congress has by implication declined to extend federal jurisdiction over [a municipality]," *id.*, makes it highly unlikely that the Court would be willing to sanction the implication of a direct Fourteenth Amendment claim against such a party either. After all, to do so would be merely another way of subjecting to liability for civil rights violations those whom Congress has by statute chosen to exclude.

    ■    For the reasons stated, I believe that no direct Fourteenth Amendment cause of action against the Township of Warminster should be implied.

    ■    Having reached a decision with respect to plaintiff's federal claims, I turn lastly to consideration of his pendent state law claims of assault and battery and negligence. It is indisputable that the state and federal claims against the individual defendants arise from a "common nucleus of operative facts" thus giving this court judicial power over both. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The defendants have pointed to no complex or unresolved questions of state law which would counsel against adjudicating the state claims and doing so will undoubtedly save time and conserve judicial resources. I will therefore exercise my discretion in favor of having the pendent state claims against the individual defendants decided in this court. With respect to the state claims against the Township of Warminster, *Aldinger*, supra, is controlling. Since there is no basis for the federal claims against the township, that case makes it clear that I may not adjudicate any state law claims against it by treating the township as a "pendent party."

Although I conclude that the refusal to find an implied Fourteenth Amendment cause of action against the township is appropriate, I nonetheless recognize that there are legitimate arguments for reaching a different result and that my decision is in conflict with those of three distinguished members of this court [19] as well as with a permissible interpretation of the Court of Appeals decision in *Skehan*. For these reasons, I believe that there is no just reason to delay the plaintiff's seeking review in the Court of Appeals of my decision dismissing the township. Since my decision with respect to the township qualifies as a final judgment completely disposing of the claims against one or more but fewer than all the parties, I will therefore enter an order expressly directing the entry of judgment for the township pursuant to Federal Rule of Civil Procedure 54(b), thus permitting an immediate appeal.

---

19. *Patzig v. O'Neill*, Civil Action Nos. 76–514/1287 (E.D.Pa. filed July 30, 1976); *Patterson v. City of Chester*, 389 F.Supp. 1093 (E.D.Pa.1975) (Weiner, J.); *Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D.Pa.1974) (Lord, C. J.); *Harris v. City of Philadelphia*, Civil Action No. 75–3662 (E.D.Pa.) (unpublished order of Cahn, J., filed September 7, 1976).