Joseph and Marie CROSLEY in their own
behalf and as Administrators of the
Estate of Joseph Crosley, Jr.

v.

Craig DAVIS et al.

Wilfreda VEGA

v.

Barry LEES et al.

Hector VELASQUEZ

v.

Barry LEES et al.

James CLEVELAND et al.

v.

CITY OF PHILADELPHIA et al.

Ulla M. BROWN

v.

CITY OF PHILADELPHIA et al.

James REED

v.

CITY OF CHESTER et al.

Cleo M. SMITH

v.

Police Officer CONNOR.

Guadalupe S. CRUZ, Administratrix of
the Estate of Victor Cruz, Deceased

v.

James REYNOLDS et al.

Civ. A. Nos. 75–1701, 75–2614, 75–2615,
75–3255 and 76–371.

United States District Court,
E. D. Pennsylvania.

Jan. 27, 1977.

Jack J. Levine, Herbert J. Bass, Hugh C. Clark, Philip Stephen Fuoco, Alan M. Lerner, Martin Heller, Jonathan Wheeler, Philadelphia, Pa., for plaintiffs.

Stephen T. Saltz, Deputy City Sol. in charge of Police Advisory and Civil Rights Section, John F. Naulty, Philadelphia, Pa., for defendants.

## OPINION

EDWARD R. BECKER, District Judge.

### I. *Preliminary Statement*

Each of the above captioned cases involves a claim against a municipal police officer for alleged violations of civil rights and alleges some form or other of police brutality.[1] The respective plaintiffs have each invoked the 28 U.S.C. § 1343(3) jurisdiction of this Court in support of a 42 U.S.C. § 1983 cause of action. However, each of the plaintiffs has also invoked our general federal question jurisdiction, 28 U.S.C. § 1331, and has pleaded what we shall describe as a *Bivens* claim, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *i. e.*, a direct cause of action in damages against the police officer's municipal employer implied, via the doctrine of *respondeat superior*, from the Fourteenth Amendment itself, asserting the violation of rights secured by the Constitution. Each of the municipality defendants has in turn moved to dismiss the *Bivens* claim for want of jurisdiction and for failure to state a claim upon which

1. The common skein linking all of the complaints before us is the allegation that a police officer has committed an assault and battery upon a citizen, generally in the course of police response to some form of disturbance. *Brown* (C.A. No. 76–371) and *Reed* (C.A. No. 76–1015) contain this type of allegation and nothing more. Crosby, Cleveland, Smith, Valasquez, Vega, and Cruz also allege that the municipality has acted wrongfully in failing adequately to train and supervise front-line police officers and to remove from duty policemen with known tendencies to use excessive or deadly force, resulting in injury to the plaintiffs or their decedents. Cleveland, Valasquez, and Vega allege false arrest. (Cleveland adds a "cover-up" charge.) Cruz also alleges that the City has permitted an atmosphere of lawlessness to pervade the police department which encourages police officers (including the officer at issue) to use deadly force in the belief that *their actions will be condoned by their superiors.*

relief can be granted. This opinion addresses those motions.

Within the past year or so it has become "boilerplate" for plaintiffs' counsel in § 1983 police brutality claims in this Court to join a *Bivens* claim with the § 1983 claim.[2] Since the municipalities in such cases have consistently moved to dismiss, there is in this district a considerable body of law on the point,[3] complementing a considerable body of law on the subject in other courts.[4] While there are some enlightening discussions in these cases, the most definitive exegesis and the most persuasive statement of the pro-implication view is found in a casenote entitled *Damages Remedies Against Municipalities For Constitutional Violations*, 89 Harv.L.Rev. 922 (1976) (hereinafter Harvard Note). The most cogent statement of the view that a *Bivens* cause of action against a municipality cannot be implied is found in the opinion of our colleague Judge Ditter in *Pitrone v. Mercadante*, 420 F.Supp. 1384 (E.D.Pa., 1976).[5]

Judge Ditter's non-implication holding in *Pitrone* rested primarily upon the existence of civil rights remedies via section 1983 and

upon that section's exclusion of municipal liability. *Pitrone, supra* at 1389–1390. In particular Judge Ditter considered limitations in the holding of *Bivens*, the legislative history of § 1983, and the recent Supreme Court cases[6] interpreting that section. After reviewing *Aldinger*, Judge Ditter observed (at 1391) that:

> The Supreme Court's conclusion that "Congress has by implication declined to extend federal jurisdiction over [a municipality]," [citing *Aldinger*, 427 U.S. at 19, 96 S.Ct. at 2422], makes it highly unlikely that the Court would be willing to sanction the implication of a direct Fourteenth Amendment claim against such a party either. After all, to do so would be merely another way of subjecting to liability for civil rights violations those whom Congress has by statute chosen to exclude.

The Harvard Note, on the other hand, takes the position that a damages action against municipalities should be implied on the authority of *Bivens* notwithstanding the Supreme Court's interpretation of § 1983. The Harvard Note distinguishes *Monroe, Moor*, and *Bruno*. *See* note 15 *infra*.

---

**2.** The volume of such claims is enormous as evidenced by the eight cases at issue in this opinion which are assigned to the docket of but a single judge. (We have a considerable number of additional alleged police brutality cases before us sans *Bivens* claims.) The incidence of assertion of *Bivens* claims has been intensified in recent months, by the Supreme Court's holding that a municipality cannot be joined in a § 1983 suit as a pendent party. *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

**3.** *Anderson v. Erwin*, Civil Action No. 76–2020 (E.D.Pa., filed Dec. 20, 1976) (VanArtsdalen, J.) (against implication); *Pitrone v. Mercadante*, 420 F.Supp. 1384 (E.D.Pa.1976) (Ditter, J.) (against implication); *Santore v. City of Philadelphia*, Civil Action No. 76–904 (E.D.Pa. filed Sept. 28, 1976) (Newcomer, J.) (pro-implication); *Harris v. City of Philadelphia*, Civil Action No. 75–3662 (E.D.Pa., unpublished order filed Sept. 7, 1976) (Cahn, J.) (pro-implication); *Rice v. City of Philadelphia*, Civil Action No. 73–895 (E.D.Pa., filed Jan. 22, 1976) (Fullam, J.) (pro-implication); *Pinto v. Clark*, 407 F.Supp. 1209 (E.D.Pa.1976) (Bechtle, J.) (pro-implication); *Patterson v. City of Chester*, 389 F.Supp. 1093 (E.D.Pa.1975) (Weiner, J.) (pro-implica-

tion); *Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D.Pa.1974) (Lord, Ch.J.) (pro-implication).

**4.** For a summary of the case law in this area, see Note, *Damage Remedies Against Municipalities For Constitutional Violations*, 89 Harv. L.Rev. 922, 928–29, n.n. 37 & 40–46 (1976).

**5.** As our opinion was in its final draft another thoughtful but slightly different explication of the non-implication view came to our attention: Comment, *Implying a Damage Remedy Against Municipalities Directly Under the Fourteenth Amendment: Congressional Action as an Obstacle to Extension of the Bivens Doctrine*, 36 Md.L.Rev. 123 (1976) (hereinafter cited as Maryland Comment). We have sought to make appropriate references below.

**6.** *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

Because of the existence of the extensive body of caselaw and the clarity of 'statement of the Harvard Note and the *Pitrone* Opinion, we need not engage in a background discussion. As will be seen, we agree with Judge Ditter that a *Bivens* cause of action against a municipality ought not to be implied. However, because we reach that result by a somewhat different route, it is necessary that we explicate our approach and our reasoning. Before doing so, and to place this opinion in proper perspective, we make a few introductory observations.

First, for the reasons set forth in the Harvard Note, we believe that from a policy viewpoint the cases which imply a *Bivens* cause of action appear on their face to reach a more desirable result for the reason that they remove any concern that a plaintiff found entitled to recover for a violation of his civil rights will have a financially responsible defendant to collect from.[7]

Secondly, we observe that the question before us is an exceedingly close one,[8] on which we have deliberated for a long period of time and on which we have "flipflopped" several times before coming to our present conclusion.[9] This is so partly because there are conflicting strains in the few appellate decisions in this general area, so that a district judge lacks clear guidance

as to how the Third Circuit or Supreme Court would decide the issue. There appear to be indications from the accent and tone in recent Supreme Court opinions which point against implication.[10] However our conclusion stems not from these atmospheric indications but from the teachings of *Bivens* in light of § 1983 and these recent Supreme Court cases interpreting it.

Thirdly, we record our interim, though ultimately rejected, resolution of the problem, *i. e.*, that a municipality may, *a la Bivens*, be implied to be "directly" as opposed to vicariously liable. We record this approach (1) because of the closeness of the question as reflected by the respectable authority on both sides, and (2) because we believe that it reflects an alternative (though hybrid) and not plainly untenable approach to the problem, recitation of which may conceivably be helpful to those judges and commentators thinking and writing in the area. Under this interim approach, a municipality would be directly liable where the actionable conduct involved application of some policy formulated by (high level) policy-making officials, such as where high police officials disseminate a policy of encouragement of or calculated indifference toward police brutality, or direct the use of deadly force in the case of minor disturbances, or adopt a policy of

---

7. ·While this consideration has been muted of late by the purchase of insurance coverage for § 1983 claims against employees by many municipalities (*e. g.*, the *Reed v. City of Chester* case at issue here), and the policy of others to settle § 1983 claims or pay § 1983 judgments against their police officers or other municipal employees, there are still some cases where the plaintiff wins an uncollectible § 1983 judgment.

The City of Philadelphia, which is named as a defendant in all but one of these cases, has made it a practice for many years to defend § 1983 suits against its police officers in this Court and to settle cases or pay judgments in the ones which it loses. We do note our concern, however, about the departure from that policy in the *Velasquez* and *Vega* cases before us, wherein the City has declined to represent the (former) policeman involved, Mr. Lees. In so noting, we intimate no view as to the consequences of such inconsistency and indeed also note our view that, *in the absence of* extensive empirical evidence that a § 1983 remedy is

often ineffective, the depth of the defendant's pocket would not appear to be a decisive or perhaps even relevant factor in the *Bivens* analysis.

8. In *Fine v. City of New·York*, 529 F.2d 70 (2d Cir. 1975), for instance, the court was able to avoid the implication question which it characterized as "difficult and troublesome." *Id.* at 76. This followed *Brault v. Town of Milton*, 527 F.2d 730 (2d Cir. 1975) (en banc), in which the Second Circuit reversed a pro-implication decision of a majority of one panel, deciding the case on other grounds. *See also Mount Healthy City School District Board of Education v. Doyle*, —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (reserving decision on implication).

9. We also heard oral argument on two occasions from "lead" counsel in the cases.

10. *See* cases cited in note 6 *supra*.

allowing police officers of known bellicose propensities to remain on the beat.[11] For the reasons set forth in note 11 *supra*, and those set forth in the text below, we have declined to rest our decision upon such a view.

■ Finally, we believe the question of implication is open to us despite *Skehan v. Board of Trustees*, 501 F.2d 31 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *on remand*, 538 F.2d 53 (3d Cir. 1976) (en banc). In *Skehan* the civil rights plaintiff sought damages from the Board of Trustees of Bloomsburg State College for actions by high-ranking administrators and the trustees themselves. *See id.* at 34–37. The Court stated: "There is § 1331 jurisdiction to award relief against the College if under Pennsylvania law it is not an agency of the Commonwealth covered by the Commonwealth's immunity." *Id.* at 44. Even assuming that in *Skehan* the Court be deemed to have upheld an implied cause of action in damages against the College (it nowhere

discussed the question in *Bivens* terms or otherwise), it had no occasion to consider the significance of the *Bivens* liability of a *municipality*, or of imposing liability through the doctrine of *respondeat superior*, for the basis of the claim in *Skehan* was the conduct of the highest level of administrative personnel—the college trustees—who virtually constituted the body corporate.[12] Moreover, the court in *Skehan* also failed to discuss the possible impact of § 1983 upon any implication decision. This important question not only forms the focal point of this opinion, but has become yet more sensitive (since *Skehan*) in the wake of *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), which demonstrates the strength of the Court's regard for the failure of Congress to render municipalities liable under § 1983. We are therefore persuaded that *Skehan* is distinguishable and hence that the *Skehan* holding should not control in this setting without a further clarification from the Court of Appeals.[13]

**11.** We note particularly in this regard (1) the Supreme Court's rejection in *Moor* of the "importation of state law vicarious liability principles" into § 1983; and (2) the appropriateness, in terms of symmetry, of ascribing liability to a municipality for direct municipal actions. *Cf. Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); *Hague v. C.I.O.*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1938); *Skehan v. Board of Trustees*, 501 F.2d 31 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *on remand*, 538 F.2d 53 (3d Cir. 1976) (en banc). In considering this approach we focused on violations of constitutional rights that are more fairly attributable to the municipality as a whole than to individual front-line personnel. Where there is a high-level policy of encouraging or ignoring constitutional infringements, actions against individual violators might provide an insufficient deterrent. *Cf. Rizzo v. Goode*, 423 U.S. 362, 382, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (Blackmun, J., dissenting). However, because of the considerations discussed *infra*, and because there is an even greater likelihood that cases against policymaking officials would be defended by (and the judgments against them paid by) the municipality, we believe the implication of a limited damage remedy for direct municipal infringements to be unwarranted. Furthermore, it may be theorized that rendering the municipality

directly liable for all constitutional infractions by its employees could decrease the deterrent effect on unconstitutional conduct of those employees by providing them with, in effect, an absolute insurer.

**12.** Indeed, it was *Skehan* which caused us to consider the direct versus vicarious approach which we ultimately rejected. *See* note 11 *supra*.

**13.** Judge Ditter, speaking in *Pitrone*, expressed the view that *Skehan* did not represent a decision on the merits of the implication question, but was instead merely a decision that there was jurisdiction to assert such a claim. *Pitrone, supra* at 1388–1389 n. 10. We agree. Concomitantly, our decision proceeds under Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted, and not under rule 12(b)(1). We do believe that there is jurisdiction to allege the Fourteenth Amendment damage claim. *See Mount Healthy City School District Board of Education v. Doyle*, —— U.S. ——, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946); *Skehan v. Board of Trustees*, 501 F.2d 31, 44 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *on remand*, 538 F.2d 53 (1976) (en banc).

## II. *Discussion*

Our discussion must begin with *Bivens.* The Court in that case was faced with the problem of whether compensation for the victims of Fourth Amendment violations by federal agents should be left to depend wholly upon variable state law tort remedies. The court concluded that a traditional damage action could be based upon the Fourth Amendment as a matter of federal law. However, *Bivens* dealt with an area in which Congress had not theretofore acted, and there was no available federal remedy against the offending (federal) agents for vindication of constitutional rights. The *Bivens* majority, writing on tabula rasa because of the absence of Congressional contraindication, had no difficulty in holding that a cause of action (*i. e.*, the traditional damage remedy) should be implied to effectuate the constitutional guarantees. *Cf. J. I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

Where Congress has acted in a given field (as it did here through § 1983), the lesson that we distill from *Bivens* is that the essential precondition for implication of a direct cause of action from the Fourteenth Amendment is a finding of necessity and appropriateness.[14] By necessity we mean only that the implication of a particular remedy under a constitutional provision must further some identifiable purpose of that provision in some important respect. By appropriateness we mean that the decision whether to imply a particular remedy must also take into account other relevant circumstances including the undertakings of Congress in the area, the overall feasibility of evaluating the necessity of a proposed remedy from a judicial rather than a legislative standpoint, and any countervailing considerations.

Before proceeding further with this analysis we must take note that: (1) while *Bivens* suggest that Congress may have the power to *preclude* constitutional remedies; (2) an "explicit Congressional declaration" might be required before a court would so find. 403 U.S. at 397, 91 S.Ct. 1999; *See* Harvard Note 935–39, 942–45; and (3) we do not believe that the legislative history of § 1983 provides an explicit Congressional declaration or a clear statement of Congressional intent to preclude all damage remedies against a municipality. To this extent we must disagree with *Pitrone, supra* at 1389. We believe that *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), *City of Kenosha v. Bruno*, 412 U.S. 511, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), as well as *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), are plainly distinguishable on this point,[15] although we can-

---

14. While we are aware of Justice Harlan's apparently disjunctive reference to these terms, 403 U.S. at 407, 91 S.Ct. 1999, we believe that in a context in which Congress has spoken Justice Harlan would have joined them conjunctively as we have done. The importance of this distinction is minimized, however, by a very close relationship between the terms. *Cf.* Maryland Comment *supra*, note 5, at 140. *See generally* Note, *Private Rights of Action under Amtrak and Ash: Some Implications for Implication*, 123 U.Pa.L.Rev. 1392, 1426–27 (1975) (viewing necessity and appropriateness in roughly separate roles and describing appropriateness in terms of the consistency of a proposed remedy with the underlying statutory provision).

15. *See* Harvard Note 939–42. In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court held that a municipal corporation is not a "person" for purposes of a § 1983 damages action. Years later, in 1973,

the Court extended that analysis to bar equitable and declaratory relief against a municipality under § 1983 in *City of Kenosha v. Bruno*, 412 U.S. 511, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). *Bruno* thus complemented the Court's holding in *Moor v. County of Alameda*, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), which held that § 1988 did not permit the importation of California law providing for vicarious liability of counties in a § 1983 action. Most recently, the Court held in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), that a § 1983 suit based upon § 1343 jurisdiction could not support a pendent party claim against a municipal corporation.

*Monroe, Moor* and *Bruno* do not instruct that Congress in § 1983 specifically intended to prevent municipalities from being held liable. Rather, the legislative history suggests only that Congress chose not to include municipalities in the definition of a "person" for purposes of § 1983 mainly because of a question raised

not gainsay that they may be a harbinger of decisions to come.

The conclusions of the preceding paragraph bid us to determine whether, in the legal ambience of this case, a court should exercise its federal judicial power, *see Biv-*. *ens, supra* 403 U.S. at 402 n. 4, 403, 91 S.Ct. 1999 (Harlan, J., concurring), to imply a vicarious damage remedy against a municipality for the actions of its police officials. After analyzing the above-described prerequisites of implication in the present setting, we have concluded that no such remedy against municipalities should be implied.

Addressing first the "necessity" question, we acknowledge our belief that implication of the proposed damage remedy against a municipality could serve a compensatory interest apparently consistent with the overall intent and purpose of the Fourteenth Amendment. *Cf.* text at note 7, *supra*. And while we cannot therefore say with any certainty that there is no necessity for implication, we feel constrained to observe that there appears to be no clearly defined need for a federal remedy against a municipality above and beyond available federal remedies against individual municipal employees under § 1983. Certainly the need here is much less than the need for a federal damages remedy against federal agents in *Bivens.* Accordingly, we have reservations about whether an implied *Bivens* damage remedy furthers the (identifiable) purpose of the Fourteenth Amendment in an *important* respect, using the word "important" not in an absolute, but in a relative sense.

Notwithstanding the foregoing discussion, our disinclination to imply a *Bivens* claim against a municipality is more a function of the appropriateness consideration, though we confess that we elide necessity and appropriateness, a procedure which itself seems appropriate in view of the interrelationship of these concepts. Thus, our decision not to imply, while set against the lack of a clearly defined necessity, stems primarily from our belief that the implication of a damage remedy against a municipality would conflict with the appropriateness considerations which we have defined above, and it is this important point which we now consider.

It is first of all our view that where the Congress has acted to provide a fairly broad remedial scheme, even though it may not be the complete much less the quintessential one, the Congressional undertaking as a whole is entitled to not inconsiderable deference when a court is faced with the question whether to fill lacunae which Congress itself has decided not to fill. Although (1) the legislative history of § 1983 does not clearly preclude a *Bivens* remedy; and (2) *Monroe, Moor, Bruno* and *Aldinger* are distinguishable from the issue at bar (*see* note 15 *supra* ), the discussion of the history of § 1983, including the celebrated Sherman Amendment, in those cases does demonstrate that Congress at least considered the option of explicitly providing a direct remedy against municipalities before deciding to reject it.[16] This "deference" oriented aspect of appropriateness is, we think, consistent with *Bivens, supra*, at 397, 91 S.Ct. 1999. *Cf. id.* at 412–13, 91 S.Ct. 1999 (Burger, C. J., dissenting).[17]

in the debate over the Sherman Amendment, *see* Harvard Note at 947, as to the constitutionality of any imposition of liability upon them. Even *Aldinger*, while suggesting that Congress' exclusion of parties "such as counties" was more direct, did not explicitly state that the interpretation of § 1983 affected any jurisdictional basis other than § 1343. *See id.* at 17 & n. 12, 96 S.Ct. at 2422 & n. 12.

**16.** Congress rejected this option mainly because of considerations of constitutional power (*see Moor, supra*, 411 U.S. at 709, 93 S.Ct. 1785; note 15 *supra* ), which, incidentally, will probably not concern a contemporary Congress

with the benefit of a century of intervening constitutional history which has eroded the contentions of the opponents of the Sherman Amendment. *Cf.* Harvard Note at 947–48. However, the Congress also took cognizance of more traditional legislative matters such as the impact on municipal treasuries, a consideration of contemporary significance as well. *See* Harvard Note at 948 and text *infra.*

**17.** *See* Maryland Comment, note 5 *supra,* at 145–52. The analysis of the Comment on the crucial issue of the importance of § 1983 in this context parallels our own in many respects.

We also believe that in these particular circumstances, the Congress, given its legislative resources and expertise, is in a superior position to assess empirically the true necessity of the proposed damage action and to measure whether there are serious countervailing factors weighing against such liability. Some such countervailing considerations may be the lessening of deterrence on unconstitutional conduct of employees who are assured in all cases that the city will be liable for their acts, or the possible impact on municipal fiscal integrity if, however desirable policy-wise, a municipality is made a "deep pocket" in all cases (*see* note 7 *supra*). Congress, by virtue of its role, is better able to fashion a remedy which can precisely balance a determined level of need with any other factors which may be found cognizable.

■ To recapitulate, we have considered the following factors: (1) the deference which we believe must be afforded to Congress' decision not to extend § 1983 liability to municipalities; (2) the superiority of Congress' position to define in precise terms the need for municipal liability; (3) the existence of possibly countervailing factors; (4) Congress' superior capacity to balance need with countervailing interests based upon a broad range of information. Taken together, these factors counsel that in the absence of clearly defined need, the implication of the proposed damages remedy is inappropriate.

■ We deem it important, before concluding, to stress our conviction that the problems with the implication of a damages remedy against a municipal entity based upon the Fourteenth Amendment and § 1331 jurisdiction do not arise in suits for injunctive or declaratory relief, regardless of the exclusions in § 1983. *See Hupart v. Board of Higher Education*, 420 F.Supp. 1087, 1103 & n. 38 (S.D.N.Y.1976) (Frankel, J.). *But see Pitrone, supra* at 1389–1390 & n. 14. We do not believe, for instance, that an injunction of the sort issued in *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), can be undermined.

*See Patterson v. Ramsey*, 413 F.Supp. 523, 528 (D.Md.1976); *cf.* Harvard Note at 950–51 n. 146.

Of special importance on this point is the analysis of Justice Harlan in his *Bivens* concurrence:

> [I]f a general grant of jurisdiction to the federal courts by Congress is thought adequate to empower a federal court to grant equitable relief for all areas of subject-matter jurisdiction enumerated therein, see 28 U.S.C. § 1331(a), then it seems to me that the same statute is sufficient to empower a federal court to grant a traditional remedy at law. [Footnote omitted.]

403 U.S. at 405, 91 S.Ct. at 2009. Justice Harlan thus determined that it would be unreasonable to distinguish between the power, in the absence of explicit Congressional declaration, to imply injunctive as opposed to compensatory remedies for constitutional infringements—for at that basic level courts have the power to do either. It has been urged that once this symmetry has been established it must stand as authority for the proposition that an injunctive remedy and a damages remedy must, in the realm of implication, succeed or fail together. We disagree.

We rescribe, in this regard, our conclusion that our decision does not depend upon a view that there is no judicial power to imply a damage remedy in the circumstances of the cases before us, but rather that it is inappropriate to do so for the reasons we have detailed. Justice Harlan himself observed that the evaluation of appropriateness of equitable relief, in view of its tradition, may differ from an evaluation of the appropriateness of an implied damages remedy:

> [T]he special historical traditions governing the federal equity system [citation omitted] might still bear on the comparative appropriateness of granting equitable relief as opposed to money damages. That possibility, however, relates, not to whether the federal courts have the pow-

er to afford one type of remedy as opposed to the other, but rather to the criteria which should govern the exercise of our power.

*Id.* at 405–06, 91 S.Ct. at 2009.

The foregoing analysis constrains us to decline to exercise our judicial power to imply the proposed damage remedy which may be said to alter what Congress has already done or left undone in section 1983. In so declining, we do not mean to deprecate the importance of the rights asserted in this case; indeed, as we have intimated above, we might prefer to reach the opposite result. But the question is not whether implication may seem desirable from the plaintiffs' present standpoint, but whether it is necessary and appropriate in the broader *Bivens* sense. Orders dismissing the claims of the various plaintiffs against the municipal defendants for failure to state a claim upon which relief can be granted will therefore be entered in the respective cases.