Lorraine JONES, Administratrix of the Estate of Anthony Stevie Jones, Deceased, and Lorraine Jones, in her own right

v.

Thomas McELROY, Individually and as Police Officer in the Police Department of the City of Philadelphia, and City of Philadelphia.

George Victor ZUBER, a minor, by his parent and natural guardian, et al.

v.

Police Officer William JONES, Badge 2395, and City of Philadelphia.

Civ. A. Nos. 76–1532, 76–3542.

United States District Court,
E. D. Pennsylvania.

March 30, 1977.

**850**

Benjamin Kuby, Philadelphia, Pa., for plaintiff Jones.

Richard F. Furia, Philadelphia, Pa., for plaintiff Zuber.

Thaddeus J. Bartkowski, Asst. City Sol., Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

These are civil rights suits against police officers and their employer, the City of Philadelphia. Jurisdiction in each action is based upon 28 U.S.C. §§ 1331(a) and 1343(3). The claims arise under the Civil Rights Act of 1871 and various provisions of the Federal Constitution, and plaintiffs also seek to assert pendent state tort law claims. The cases are before me on motions to dismiss, Fed.R.Civ.P. 12(b).

### I. *The Suits*

A. *Jones v. McElroy, Civil Action No. 76–1532*

Anthony Stevie Jones was allegedly shot and killed by defendant, police officer McElroy. Plaintiff, Anthony's mother, sued in her capacity as administratrix of his estate and in her own behalf, basing the cause of action upon the Fourteenth Amendment to the Constitution and the Civil Rights Act of 1871. She also asserts pendent state tort law claims under the Pennsylvania Wrongful Death Act, 12 P.S. §§ 1601 *et seq.*, and the Pennsylvania Survival Act, 20 Pa.C.S.A. §§ 3371 *et seq.*

The complaint alleges that on the evening of June 25, 1975, McElroy, acting within the scope of his duties, used "unreasonable and unlawful deadly force" when he shot the decedent while attempting to control him (Complaint ¶ 9); that McElroy's action was "wrongful, willful, wanton, reckless, careless, malicious and negligent" (*id.* ¶ 9); that the City was "wanton, reckless, careless and negligent" in its employment, training, and supervision of McElroy (*id.* ¶ 10); and that McElroy and the City acted in concert with the specific intent to deprive the decedent of his rights (*id.* ¶ 11). Liability against the City is also asserted under principles of *respondeat superior.* The suit is against defendants "jointly and/or severally."

On behalf of the estate, plaintiff claims damages for medical expenses, for pain and suffering prior to decedent's death and for loss of decedent's probable future earnings. Plaintiff also seeks punitive damages and compensation for her loss of her son's probable earnings and funeral, interment, and administration expenses. The damage claims exceed $10,000.

McElroy and the City move to dismiss for lack of standing. The City also moves to dismiss for lack of jurisdiction, Fed.R.Civ.P. 12(b)(1), and for failure to state a claim upon which relief can be granted, Fed.R. Civ.P. 12(b)(6).

B. *Zuber v. Jones, Civil Action No. 76–3542*

Plaintiffs in this action are George Victor Zuber, a minor, his father, and his sister, the minor's "voluntary guardian and nurse".

The complaint alleges that on the evening of January 3, 1975, defendant police officer Jones, acting within the scope of his duties, "without any warning, provocation or justification, suddenly, violently, negligently, recklessly, intentionally, maliciously and wantonly" shot the minor plaintiff in the back, causing serious injuries (Complaint ¶ 4). The complaint is in five counts. The first count charges Jones and the City with recklessness and negligence, the City's fault being predicated on the doctrine of *respondeat superior* and its failure "to establish and properly implement adequate guidelines and procedures for the hiring, testing and training of its police officers." The second count charges that defendants intentionally deprived minor plaintiff of constitutional rights through conduct in violation of Pennsylvania criminal law, with the City's liability based on the same theories as in the first count. The third count specifically invokes the Civil Rights Act of 1871 and alleges deprivation of the minor plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments; *respondeat superior* is the only asserted basis for the City's liability under this count. The fourth count invokes unspecified "laws of the Commonwealth of Pennvlania" as a basis for relief, again basing municipal liability solely on the *respondeat superior* doctrine. The fifth count reasserts plaintiffs' cause of action against the City on the basis of the negligence and vicarious liability previously alleged. Jones and the City are sued "individually and jointly."

Plaintiffs seek to recover an amount in excess of $10,000 for the minor's personal injuries, past and future medical expenses, loss of future earnings, and punitive damages.

The City moves to dismiss for lack of jurisdiction, Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

II. *Standing*

■ McElroy and the City contest plaintiff's standing in *Jones v. McElroy*. Although no objection to standing has been raised in *Zuber v. Jones*, the problem is present in that case as well. To have standing, each plaintiff must show that a case or controversy exists under Art. III, § 2 of the Constitution in that he or she has suffered some personal injury in fact to an interest arguably within the zone of interests protected by the Act or constitutional provision under which he sues. *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Director, Office of Workers' Compensation Programs v. Rochester & Pittsburgh Coal Co.*, Nos. 76–1828, 76–1868 (3d Cir., Jan. 17, 1977).

A. *Jones v. McElroy*

Defendants do not seriously contest plaintiff's standing to assert state law claims for wrongful death and survival, but base their attack upon her right to advance the alleged civil rights claims. The deceased son clearly suffered an injury to his Fourteenth Amendment right to life, but defendants contend that the Civil Rights Act of 1871, 42 U.S.C. § 1983, does not explicitly provide for the survival of a civil rights action.

Defendants' contention is without merit. Congress has provided that:

"[I]n all cases where [federal statutes for the protection of civil rights] are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies . . ., the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such

. . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ." Civil Rights Act of 1866, 42 U.S.C. § 1988.

This provision has been held to fill the gap in § 1983 caused by the death of a victim by authorizing adoption of state survival statutes.[1] This conclusion derives from the history and purpose of the Civil Rights Acts as a means of redress for deprivations of constitutional rights. As the Court of Appeals explained in *Brazier v. Cherry*, 293 F.2d 401, 404 (5th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961):

"[I]t defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death. The policy of the law and the legislative aim was certainly to protect the security of life and limb as well as property against these actions. Violent injury that would kill was not less prohibited than violence which would cripple." [Footnote omitted.]

The line of cases reaching this conclusion has been cited with approval by the Supreme Court. *See Moor v. County of Alameda*, 411 U.S. 693, 702–03 n. 14, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

■ Pennsylvania law provides for the survival of actions. Pennsylvania Survival Act, 20 Pa.C.S.A. §§ 3371 *et seq.* It is therefore clear that plaintiff may sue in her representative capacity to redress deprivations of decedent's civil rights and that, in so doing, she stands in decedent's place and has standing to assert this action.

In suing in her own behalf to redress deprivations of her constitutional rights, the mother plaintiff relies on *Mattis v. Schnarr*, 502 F.2d 588 (8th Cir. 1974), which holds that a parent has standing to bring a civil rights action to redress deprivation of the constitutional right to parenthood when a child is fatally shot by a police officer.[2]

■ Standing to assert deprivation of a constitutional right to parenthood has not been decided by the Third Circuit, but in *Denman v. Wertz*, 372 F.2d 135 (3d Cir.) (per curiam), *cert. denied*, 389 U.S. 941, 88 S.Ct. 300, 19 L.Ed.2d 293 (1967), the Court did consider a related issue. *Denman* was an action for interference with a parent's right to access to his children. Denman, who was estranged from his wife, took his children from the custody of his wife in Ohio and attempted to transport them to Massachusetts. As the children were passing through Pennsylvania, they were picked up by the police and returned to their mother. Denman sued under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985. The Court of Appeals held that Denman had failed to allege that he himself was deprived of any federal rights, and affirmed dismissal of the action. Relying upon *Denman*, two of my learned colleagues have held that a parent may not maintain a civil rights action for the wrongful death of a child.[3] Although their decisions have given me pause, I nevertheless conclude that *Den-*

---

1. *See Spence v. Staras*, 507 F.2d 554 (7th Cir. 1974); *Hall v. Wooten*, 506 F.2d 564 (6th Cir. 1974); *Brazier v. Cherry*, 293 F.2d 401 (5th Cir.), *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961); *Pritchard v. Smith*, 289 F.2d 153 (8th Cir. 1961).

2. The court in *Mattis* concluded that parenthood is a fundamental aspect of liberty entitled to Fourteenth Amendment protection, *citing Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923) (14th Amendment "liberty" includes "right of the individual . . . to marry, establish a home and bring up children") and *Griswold v. Connecticut*, 381

U.S. 479, 495, 85 S.Ct. 1678, 1688, 14 L.Ed.2d 510 (1965) (recognizing right "to marry and raise a family"). *See also Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). *Cf. Whalen v. Roe*, —— U.S. ——, ——, —— & n. 26, 97 S.Ct. 869, 876 & n. 26, 51 L.Ed.2d 64 (1977) (right to privacy in family matters); *Runyon v. McCrary*, 427 U.S. 160, 176–79 & n. 15, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

3. *See Anderson v. Erwin*, Civil No. 76–2020 (E.D.Pa., Dec. 20, 1976) (VanArtsdalen, J.); *Strickland v. City of Easton*, Civil No. 75–93 (E.D.Pa., Oct. 27, 1976) (Fullam, J.).

*man* is not controlling. Denman had no legal right to custody of the children. He had abducted and unlawfully taken the children away from their mother, to whom legal custody had been awarded. In taking the children, the police did not deprive Denman of any right. That situation is simply inapposite to the total deprivation of parental rights caused by death in the instant case. I believe that when directly confronted with the issue, the Third Circuit will adopt the persuasive reasoning of the Eighth Circuit and conclude that the killing of a child deprives the parents of a fundamental constitutional right for which the parents may obtain redress. Plaintiff has standing to bring this action in her own behalf.

### B. *Zuber v. Jones*

Defendants in *Zuber* have not raised the question but, insofar as this is an action for deprivation of constitutional rights, the standing of the minor plaintiff's father and sister to bring this action in their own behalf is in issue. Resolution of the issue turns on whether these plaintiffs have *themselves* been deprived of a constitutional right. *See generally O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973).

■ Unlike *Jones v. McElroy, Zuber* is not an action for death of a child; it is for non-fatal injuries to a child. Total deprivation of the right to parenthood is therefore not involved and no other *constitutional* right of the minor plaintiff's father is implicated. As for the sister, I am aware of no case explicating a constitutional right to the well being of a sibling. I therefore hold that the child's father and sister do not have standing to maintain this civil rights action in their own behalf.

### III. *Are Municipalities subject to suits for damages for violation of civil rights?*

#### A. *Legal Background*

Section 1 of the Fourteenth Amendment provides:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Pursuant to its power to enforce this provision "by appropriate legislation" (Amend. XIV, § 5), Congress enacted the Civil Rights Act of 1871, U.S.Rev.Stat. § 1979, 42 U.S.C. § 1983, which provides

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The original Act[4] contained a provision granting district courts jurisdiction over such suits. That jurisdictional provision is now contained within 28 U.S.C. § 1343:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\* \* \* \* \* \*

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. . . ."

■ Basic to the City's motion to dismiss is the fact that the Act only imposes liability upon "persons." In a recent series of cases, the Supreme Court, considering the Act's legislative history, has held that municipalities are not "persons" within the meaning of the Act. *See City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37

---

4. Act of April 20, 1871, ch. 22, 17 Stat. 13.

L.Ed.2d 109 (1973); *Moor v. County of Alameda*, 411 U.S. 693, 706–10, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Monroe v. Pape*, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This holding has had both substantive and jurisdictional implications. Substantively, it has excluded municipalities from liability under § 1983. *See Monroe, supra.* There has been a complementary effect on jurisdiction in that the jurisdictional statute, § 1343(3), only applies to a "civil action authorized by law" for deprivation of civil rights. Since § 1983 does not authorize civil actions against municipalities, there is no § 1343(3) jurisdiction for civil rights claims against such defendants. *See City of Kenosha, supra.*

■ Recently plaintiffs have attempted to circumvent this restriction in an effort to reach the "deep pocket" of municipalities. One method was to assert claims against a municipality under state law and to seek to have such claims tried along with civil rights claims against municipal employees under the pendent jurisdiction doctrine. This "pendent party" route was closed by the Supreme Court in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Focusing upon the fact that Con-gress had excluded municipalities from § 1983 liability and § 1343(3) jurisdiction, the Court concluded that pendent jurisdiction could not be used to expand the scope of a civil rights action against municipal employees to encompass claims against the municipality itself. *Id.* at 16–19, 96 S.Ct. 2413.[5]

In the wake of *Aldinger*, civil rights plaintiffs have sought to reach municipalities through the method employed in the instant cases—by asserting a cause of action against the municipality directly under the Due Process Clause of the Fourteenth Amendment.[6] The structural support for this approach is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Supreme Court declared a direct cause of action under the Fourth Amendment for deprivation of civil rights by federal officers. The City's motions to dismiss attack extension of the *Bivens* doctrine to Fourteenth Amendment claims against municipalities on both substantive and jurisdictional grounds. Although counsel for the City conceded the jurisdictional issue at oral argument, I shall discuss it briefly.

**5.** *Aldinger* involved the assertion of pendent state law claims against Spokane County, Washington, in a § 1983 action against county employees. There was no independent basis for jurisdiction over the county. The Court stated that whether jurisdiction could be exercised over the county turned "upon the deductions which may be drawn from congressional statutes as to whether Congress wanted to grant this sort of jurisdiction to federal courts." 427 U.S. at 17, 96 S.Ct. at 2421. It then reasoned:

"Parties such as counties, whom Congress *excluded* from liability in § 1983, and therefore by reference in the grant of jurisdiction under § 1343(3), can argue with a great deal of force that the scope of that 'civil action' over which the district courts have been given statutory jurisdiction should not be so broadly read as to bring them *back* within that power merely because the facts also give rise to an ordinary civil action against them under state law. In short, as against a plaintiff's claim of *additional* power over a 'pendent party,' the reach of the statute conferring jurisdiction should be construed in light of the scope of the cause of action as to which federal judicial power *has* been extended by Congress." original).

Concluding that "in this case Congress has by implication declined to extend federal jurisdiction over a party such as Spokane County", the Court held that consideration of the pendent claims against the county was improper. *Id.* at 19, 96 S.Ct. at 2422.

**6.** In paragraph 20 of the complaint in *Zuber v. Jones*, the minor plaintiff asserts that defendants deprived him "of his 4th Amendment right to be secure in his person; of his 5th and 14th Amendment rights in that he was deprived of the equal protection of the Law, and of his liberty without due process of law under the color of state authority; of his 8th Amendment right in that he was subjected to cruel and unusual treatment." Plaintiff's cause of action may not be asserted directly under the 4th, 5th and 8th Amendments since these only proscribe *federal*, not *state*, conduct and since the alleged wrongdoing in this case occurred under color of *state* law. *See, e. g., Barron v. Mayor and City Council of Baltimore*, 32 U.S. (7 Pet.) 243 (1833). These Amendments do provide substantive meaning to the provisions of the 14th Amendment insofar as they are "incorporated" into its Due Process Clause.

### B. Jurisdiction for civil rights damage suits against municipalities.

Since, as above noted, § 1343(3) is not available as a jurisdictional base, plaintiffs in each of these cases ground their claims on a different jurisdictional statute, 28 U.S.C. § 1331(a), which provides:

> "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . ."

 A civil rights action asserted directly under the Constitution "arises under the Constitution" within the meaning of § 1331(a). *Mt. Healthy City School District Board of Education v. Doyle,* —— U.S. ——, —— – ——, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977); *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).[7] Since plaintiffs have asserted a claim directly under the Constitution in these actions, and since the amounts in controversy exceed $10,000 in each case, there is jurisdiction over the civil rights claims against the City under § 1331(a) and actions against the City may not be dismissed for lack of jurisdiction.

### C. Failure to state a claim for damages against municipalities.

The City's primary contention is that as a matter of law claims for damages do not lie against municipalities for deprivations of Fourteenth Amendment rights and that these actions against it should be dismissed for failure to state claims upon which relief can be granted. Resolution of this contention depends upon whether the holding in *Bivens, supra,* is to be extended to Fourteenth Amendment claims against municipalities.

*Bivens* was an action for damages against agents of the Federal Bureau of Narcotics who allegedly made an arrest and search without a warrant or probable cause and used unreasonable force in making the arrest. Bivens alleged that the agents' conduct deprived him of his Fourth Amendment right to be "secure . . . against unreasonable searches and seizures" and based his claim for damages directly upon that provision. Reversing lower court holdings that the plaintiff had failed to state a claim upon which relief could be granted, the Supreme Court rejected the contention that the plaintiff was limited to state tort law remedies, noting that state tort law protected different interests than the Fourth Amendment and therefore was not adequate to vindicate Fourth Amendment rights. 403 U.S. at 390–95, 91 S.Ct. 1999. The Court then concluded that federal courts have inherent power to remedy constitutional injuries by awarding damages since damages "[h]istorically . . . [had] been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Id.* at 395–97, 91 S.Ct. at 2004.

The Court in *Bivens* did not state that an action for damages arising directly under the Constitution would always be allowed. It cautioned that, "[t]he present case involves no special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 396, 91 S.Ct. at 2004–2005.[8] It added:

> must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy.
>
> [T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."
>
> 327 U.S. at 681–82, 66 S.Ct. at 775–776.

---

**7.** As the Court explained in *Bell,* the fact that the claim may not be one upon which relief may be granted has no bearing on the exercise of § 1331(a) jurisdiction:

"Before deciding that there is no jurisdiction, the District Court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. . . [W]here the complaint . . . is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court . . . must entertain the suit. . . . The reason for this is that the court

**8.** *Citing United States v. Standard Oil Co.,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947) (federal fiscal affairs); *Wheeldin v. Wheeler,*

"[W]e cannot accept respondents' formulation of the question as whether the availability of money damages is necessary to enforce the Fourth Amendment. For we have here no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." *Id.* at 397, 91 S.Ct. at 2005. Aside from these statements, however, the Court provided scant guidance as to when a direct action would be allowed.

A number of courts have extended the *Bivens* holding to actions under the Fourteenth Amendment.[9] Some decisions appear to have been based, in part at least, upon the desire to provide civil rights plaintiffs with defendants who are not judgment proof. *See, e. g., Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975). The municipal exclusion from § 1983 liability has been viewed by these courts as limited only to that section and has been seen as insufficient evidence of congressional intent to extend the exclusion to all Fourteenth Amendment civil rights actions. *See generally*, Note, Damage Remedies Against Municipalities for Constitutional Violations, 89 Harv.L.Rev. 922 (1976) (hereinafter cited as Harvard Note).

Recently, however, an increasing number of courts have declined to extend the *Bivens* rationale to Fourteenth Amendment claims against municipalities.[10] A leading case so holding in this district is *Pitrone v. Mercadante*, 420 F.Supp. 1384 (E.D.Pa. 1976), *appeal pending*, No. 76–2593 (3d Cir.), in which Judge Ditter concluded that § 1983 provided an "explicit congressional declaration" (*quoting Bivens, supra*, 403 U.S. at 397, 91 S.Ct. 1999) of an equally effective alternate remedy, thereby making a *Bivens* action against municipalities improper. More recently Judge Becker reached the same result on the reasoning that recognition of a *Bivens* action was not clearly necessary in this situation and would be inappropriate because Congress had already acted in the area and was in a better position to judge the policy factors involved. *Crosley v. Davis*, 426 F.Supp. 389 (E.D.Pa. 1977).[11] *See generally* Comment, Implying

373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (congressional employees).

**9.** *See, e. g., Cox v. Stanton*, 529 F.2d 47, 50–51 (4th Cir. 1975); *Hostrop v. Board of Junior College District No. 515*, 523 F.2d 569, 576–77 (7th Cir. 1975), *cert. denied*, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976); *Brault v. Town of Milton*, 527 F.2d 730, 732–35 (2d Cir. 1975), *rev'd on other grounds upon reconsideration en banc, id.* at 736–41; *Hander v. San Jacinto Junior College*, 522 F.2d 204 (5th Cir. 1975), *supplementing Hander v. San Jacinto Junior College*, 519 F.2d 273 (5th Cir. 1975) (by implication); *Hanna v. Drobnick*, 514 F.2d 393, 398 (6th Cir. 1975); *Drennon v. Philadelphia General Hospital*, 428 F.Supp. 809, at 810–812 (E.D.Pa.1977) (Higginbotham, J.); *Santore v. City of Philadelphia*, Civil No. 76–904 (E.D.Pa., Sept. 28, 1976) (Newcomer, J.); *Harris v. City of Philadelphia*, Civil No. 75–3662 (E.D.Pa., Sept. 7, 1976) (order per Cahn, J.); *Rice v. City of Philadelphia*, Civil No. 73–895, slip op. at 2–3 (E.D.Pa., Jan. 21, 1976) (Fullam, J.); *Britton v. Philadelphia Police Dept.*, 69 F.R.D. 449 (E.D. Pa.1975) (Bechtle, J.); *Patterson v. City of Chester*, 389 F.Supp. 1093, 1095–96 (E.D.Pa. 1975) (Weiner, J.); *Maybanks v. Ingraham*, 378 F.Supp. 913, 914–16 (E.D.Pa.1974) (Lord, C. J.) (alternate holding); *Panzarella v. Boyle*, 406

F.Supp. 787, 790–93 (D.R.I.1975); *Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975); *Dahl v. City of Palo Alto*, 372 F.Supp. 647, 649–51 (N.D.Cal.1974).

**10.** *See, e. g., Crosley v. Davis*, 426 F.Supp. 389 (E.D.Pa.1977) (Becker, J.); *Anderson v. Erwin*, Civil No. 76–2020 (E.D.Pa., Dec. 20, 1976) (Van Artsdalen, J.); *Pitrone v. Mercadante*, 420 F.Supp. 1384 (E.D.Pa.1976) (Ditter, J.), *appeal pending*, No. 76–2593 (3d Cir.); *Gifford v. Rodriguez*, Civil No. N–76–157 (D.Conn. Jan. 10, 1977); *Gresham v. City of Chicago*, 405 F.Supp. 410 (N.D.Ill.1975); *Jamison v. McCurrie*, 388 F.Supp. 990 (N.D.Ill.1975); *Smetanka v. Borough of Ambridge*, 378 F.Supp. 1366, 1375–78 (W.D.Pa.1974); *Perry v. Linke*, 394 F.Supp. 323 (N.D.Ohio 1974); *Perzanowski v. Salvio*, 369 F.Supp. 223, 228–31 (D.Conn.1974).

**11.** Judge Becker used a modified version of Justice Harlan's proposal in *Bivens* that the question whether to recognize an action asserted directly under the Constitution should be answered by a policy analysis directed to "whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted" (*Bivens, supra*, 403 U.S. at 407, 91 S.Ct. at 2008 (Harlan, J., concurring)).

a Damage Remedy Against Municipalities Directly Under the Fourteenth Amendment: Congressional Action as an Obstacle to Extension of the *Bivens* Doctrine, 36 Md.L.Rev. 123 (1976) (hereinafter cited as Maryland Comment).

The Supreme Court has recognized, but not decided, the issue, although it has held that *jurisdiction* for a direct Fourteenth Amendment action may be based upon 28 U.S.C. § 1331(a).[12] The Third Circuit has also limited its holdings to the jurisdictional question,[13] although two cases presenting the substantive issue are now pending before it.[14] I have not previously had occasion to discuss the issue at length, although I have expressed my agreement with Judge Ditter's *Pitrone* holding.[15]

There is language in *Bivens* suggesting that if there is an "explicit congressional declaration" that a plaintiff must resort to a specifically delineated equally effective remedy, an action for damages may nevertheless be asserted directly under a provision of the Constitution if such direct action is necessary for the enforcement of that provision. *Bivens, supra* 403 U.S. at 397, 91 S.Ct. 1999. I agree with Judge Ditter's conclusion in *Pitrone* that there is such an "explicit congressional declaration", and I do not believe that direct action is necessary for the enforcement of the Fourteenth

Amendment. Congress has provided various remedies for violations of Fourteenth Amendment rights and there is no reason to believe that the Amendment will cease to have meaningful force if a cause of action for damages against municipalities is denied. *See* Maryland Comment, *supra*, at 141 n. 99. I need not, and do not, however, base my holding on the application of the strict necessity test, for I believe that, under broader policy considerations, a *Bivens* action under the Fourteenth Amendment is not appropriate.

In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–2088, 45 L.Ed.2d 26 (1975), the Supreme Court stated:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? [Citations omitted.] Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy

12. *See Mt. Healthy City School District, supra,* —— U.S. at ——–——, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471; *Aldinger, supra,* 427 U.S. at 4 n. 3, 96 S.Ct. 2413; *City of Kenosha, supra,* 412 U.S. at 514, 93 S.Ct. 2222. *But see City of Charlotte v. Local 660, Firefighters,* 426 U.S. 283, 284 n. 1, 96 S.Ct. 2036, 48 L.Ed.2d 636 (1976); *City of Kenosha, supra,* 412 U.S. at 516, 93 S.Ct. 2222 (Brennan, J., joined by Marshall, J., concurring).

13. *See Rotolo v. Borough of Charleroi,* 532 F.2d 920, 922 (3d Cir. 1976); *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 44 (3d Cir. 1974), *vacated and remanded for further consideration in light of recent Supreme Court decisions on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Braden v. University of Pittsburgh,* 477 F.2d 1, 7 n. 10 (3d Cir. 1973). *See also Howell v. Cataldi,* 464 F.2d 272, 274–75, 276–77 (3d Cir. 1972). Although some authorities have read *Skehan* as authorizing an action directly under

the 14th Amendment, I view it as only addressing the jurisdictional issue.

14. *Pitrone v. Mercadante,* No. 76–2593 (3d Cir.); *Mahone v. Waddle,* Nos. 76–1377, 76–1378 (3d Cir.). Notwithstanding the pendency of these appeals, I have decided not to postpone decision on this matter. If later shown to have been erroneous, dismissal of an action against the City will only present problems if a plaintiff prevails against a police officer and is then unable to collect a judgment from him. Whatever may be the reasons, this does not appear to have been a serious problem to date in the civil rights cases in this court against City policemen.

15. *See Nelson v. Southeastern Pennsylvania Transportation Authority,* 420 F.Supp. 1374, 1379 n. 2 (E.D.Pa.1976). *See also Roach v. Kligman,* 412 F.Supp. 521, 528–29 (E.D.Pa. 1976).

for the plaintiff? [Citations omitted.] And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted.]"

Although the Court was speaking of the recognition of a damage remedy under a federal statute, I think its analysis is an appropriate starting point in deciding whether to recognize such a remedy under a provision of the Constitution.[16]

The first and fourth factors mentioned in *Cort* weigh in favor of recognizing a direct action for damages. By its own terms, the Fourteenth Amendment does "create a federal right in favor of the plaintiff" (*Cort, supra* at 78, 95 S.Ct. at 2088), and vindication of federal constitutional rights is not a matter traditionally relegated to state law. *See, e. g., Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). As to the second factor, plaintiffs have not cited any part of the legislative history of the Fourteenth Amendment reflecting a legislative intent to create a private cause of action for damages. On the other hand, interpreted by the Supreme Court, the legislative history of § 1983, part of the legislative scheme enacted by Congress for the enforcement of the Fourteenth Amendment, evidences an intent *not* to impose liability upon municipalities, and this is an important factor weighing against recognition of a direct cause of action for damages against a municipality. *See Crosley, supra*, 426 F.Supp. at 395–396. It is the third factor—consistency with the legislative scheme—which is of the greatest importance in this case, however.

The Fourteenth Amendment provides for congressional enforcement of its provisions through "appropriate legislation." Amend. XIV, § 5. In accordance with that provision, Congress has enacted a broad legislative scheme for the enforcement of Fourteenth Amendment rights. The Civil Rights Act of 1871 (§ 1983) is merely a starting point. As noted, it provides a private *damage* remedy against persons who, acting under color of state law, deprive others of Fourteenth Amendment rights, but it excludes states and municipalities from such liability.[17] By contrast, Title II of the Civil Rights Act of 1964, which prohibits discrimination or segregation in places of public accommodation if supported by state action, only permits private actions by aggrieved persons for *injunctive* relief, precluding actions for damages altogether.[18] A third example of legislative remedy is Title VII of the 1964 Civil Rights Act, prohibiting employment discrimination, which not only provides a private action for specified damages after certain procedural prerequisites have been met, but also extends liability to states and municipalities.[19] It is evident that Congress has tailored the remedial provisions of its civil rights enactments to fit each particular problem confronted.

In my view, judicial recognition of actions for damages arising directly under the Constitution would subvert this legislative scheme by allowing bypass of the limitations imposed by Congress on private actions under these Acts. It is interesting to note one commentator's suggestion that—

"The *Bivens* decision leads to the rather striking conclusion that section 1983 may simply be unnecessary: money damages,

---

**16.** Indeed, the Court twice cited *Bivens* in support of the propositions it set forth in *Cort*. *See* 422 U.S. at 78, 82, 95 S.Ct. 2080.

**17.** *See City of Kenosha, supra*; *Moor, supra*; *Monroe, supra*; *United States ex rel. Gittlemacker v. County of Philadelphia*, 413 F.2d 84, 86 n. 2 (3d Cir. 1969), *cert. denied*, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970).

**18.** Civil Rights Act of 1964, Title II, §§ 204(a), 207(b), 42 U.S.C. §§ 2000a–3(a), 2000a–6(b);

*see Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150–51 n. 5, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

**19.** *See* Civil Rights Act of 1964, Title VII, §§ 701(a), 701(b), 701(f), 703, 704, 706(f), 706(g), 42 U.S.C. §§ 2000e(a), 2000e(b), 2000e(f), 2000e–2, 2000e–3, 2000e–5(f), 2000e–5(g); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

as well as equitable relief, may be obtained in suits founded directly upon the Constitution." Dellinger, *Of Rights and Remedies: The Constitution as a Sword*, 85 Harv.L.Rev. 1532, 1559 (1972) (footnote omitted).

Of course, § 1983 would not thereby be rendered totally superfluous; under present jurisdictional statutes it would retain significance as to claims failing to meet the $10,000 prerequisite to general federal question jurisdiction under 28 U.S.C. § 1331(a). This would mean, then, that the municipal exclusion from liability under § 1983 would serve only to exclude municipalities from claims under $10,000, but not from those in excess of that amount. Additionally, since alleging the amount in controversy is seldom a significant problem in civil rights actions "[w]hat appears to be the broad substantive significance of *Monroe* [and other cases establishing the exclusion would] then [be] reduced, in many cases, to a mere pleading rule." *Dahl v. City of Palo Alto*, 372 F.Supp. 647, 650 (N.D.Cal.1974) (footnote omitted). I agree with Judge Ditter (*Pitrone, supra*, 420 F.Supp. at 1390) that this interpretation does not comport with the legislative intent manifested by Congress.

Counsel have suggested that the municipal exclusion from liability in § 1983 should not be accorded great significance because it is based upon nineteenth century legal misconceptions as to the power of Congress to extend liability to municipalities [20] and is derived merely from a Supreme Court interpretation of an ambiguous legislative history.[21] Whether or not Congress' reasons for excluding municipalities from § 1983 liability remain valid is immaterial. The municipal exclusion must be accorded the same significance as any other provision of law whatever the reason for its enactment.[22] *Cf. Moor, supra*, 411 U.S. at 709, 93 S.Ct. 1785. The Supreme Court's interpretation of § 1983's legislative history and pronouncement of municipal exclusion from liability is no longer open to question. Since the *Monroe* decision in 1961, the holding has been repeated with approval in numerous cases, culminating in the recent *Aldinger* decision, which discussed its implications on federal court jurisdiction. *See generally* Maryland Comment, *supra*, at 149–52. Although proposals to abolish the exclusion have been made [23] and Congress recently eliminated the municipal exclusion from liability in another civil rights act,[24] the exclusion in § 1983 has remained intact, a fact at least implying

**20.** At the time of enactment of § 1983 many congressmen expressed *doubt as to whether* Congress had the power to impose liability upon municipalities. *See, e. g., Moor, supra*, 411 U.S. at 708–09 & n. 24, 93 S.Ct. 1785. In light of recent cases, congressional power to do so no longer seems open to question. *See, e. g., Mt. Healthy City School District, supra*, —— U.S. at ——, 97 S.Ct. at 572, 50 L.Ed.2d 471 (municipalities are not immune from suit under the 11th Amendment); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Congress has power under § 5 of the 14th Amendment to impose liability upon states for damages despite limitations of the 11th Amendment).

**21.** *See, e. g.*, Harvard Note, *supra*, at 951: "[T]o curtail, on the basis of the legislative history of the 1871 Act, the development of common law based directly on the fourteenth amendment would be anachronistically to ignore almost a century of constitutional law. [Footnote omitted.]"

**22.** I note that there are policy considerations favoring *personal accountability which* Congress might well rely on as reason for retaining the exclusion. *See Ries v. Lynskey*, 452 F.2d 172, 175 (7th Cir. 1971).

**23.** Harvard Note, *supra*, at 927 n. 31, *citing* United States Commission on Civil Rights, Law Enforcement: A Report on Equal Protection in the South 179 (1965).

**24.** *See* Equal Employment Opportunity Act of 1972, Act of March 24, 1972, Pub.L.No. 92–261, §§ 2, 4, 86 Stat. 103, *amending* Civil Rights Act of 1964, Title VII, §§ 701, 706, 42 U.S.C. §§ 2000e, 2000e–5. The amendments to Title VII evidence Congress' concern with municipal violations of civil rights. *See, e. g.*, H.R. Report No. 92–238, 1972 U.S.Code Cong. & Admin. News, pp. 2137, 2152–54 (1971). *See generally* Sipe and Hart, Title VII Reconsidered: The Equal Employment Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824, 847–49 (1972).

continued congressional approval.[25] The exclusion thus cannot be dismissed as an anachronism in need of judicial circumvention.

Damage actions against municipalities asserted directly under the Fourteenth Amendment would conflict with the civil rights enforcement scheme enacted by Congress and should not be presumed. Viewed from another perspective, this is an application of the familiar rule, applied even in actions to vindicate federal constitutional rights, that the provisions of a more detailed statute (here, § 1983) preempt more general remedies (*Bivens* actions).[26]

Two other factors, not mentioned in *Cort v. Ash, supra*, are also pertinent here. The first is that, unlike *Bivens*, in which state tort remedies were found inadequate to enforce Fourth Amendment rights (403 U.S. at 394–95, 91 S.Ct. 1999) and federal statutory remedies were virtually nonexistent (*see Pitrone, supra*, 420 F.Supp. at 1389), these are not cases in which plaintiffs will have no remedy in the absence of a direct Fourteenth Amendment claim against the City. Plaintiffs' civil rights claims in the instant actions closely resemble state tort claims, and Pennsylvania tort remedies against the City appear adequate to provide redress.[27] More important, Congress has provided an alternate remedy in § 1983,

authorizing actions against the offending policemen. While this remedy may not always provide the "deep pocket" plaintiffs seek (*cf. Moor, supra*, 411 U.S. at 700 n. 10, 93 S.Ct. 1785), it cannot be said to be ineffective.

The second additional factor is federalism, a consideration which was also absent in *Bivens*, but which necessarily enters into any federal court imposition of liability upon a state-created entity. *Perzanowski v. Salvio*, 369 F.Supp. 223, 230–31 (D.Conn.1974). *See also Rizzo v. Goode*, 423 U.S. 362, 377–80, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (discussing equitable relief). The importance of this factor has been increasingly emphasized by the Supreme Court. *See, e.g., Rizzo, supra; Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). At the least, federalism mandates caution in imposing new sources of liability against municipalities, particularly in light of the increasingly acute social and financial problems confronting them.

For all of the foregoing reasons, I hold that claims for damages against municipalities may not be asserted directly under the Fourteenth Amendment. The City's motions to dismiss for failure to state claims against the City will be granted.

---

25. Congress has not hesitated to correct what it perceives as defects in the civil rights enforcement statutes or to overturn what it views as overly restrictive statutory interpretations by the Supreme Court. *See, e. g.*, Equal Employment Opportunity Act, *supra*, note 24; Civil Rights Attorney's Fees Awards Act of 1976, Act of Oct. 19, 1976, Pub.L.No. 94–559, 90 Stat. 2641, *amending* U.S.Rev.Stat. § 722, 42 U.S.C. § 1988 (enacted just seventeen months after Supreme Court held attorney's fees unavailable in civil rights cases, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).

26. *See, e. g., Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Civil Rights Act of 1964, Title VII, § 717 is exclusive remedy for claims of discrimination in federal employment); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (habeas corpus statute precludes recourse to § 1983 for relief from confinement). The *Brown* decision,

which held that § 717 of the 1964 Act preempted the more general remedy under the Civil Rights Act of 1866, 42 U.S.C. § 1981 (*see* 425 U.S. at 823–24, 96 S.Ct. 1961), has recently been extended to preclude a *Bivens* action against the federal government under the 5th Amendment's Due Process Clause. *See Beeman v. Middendorf*, 425 F.Supp. 713, 715–16 (D.D.C., 1977).

27. These are essentially claims for assault, battery, and negligence. The death action can be brought under the Pennsylvania Wrongful Death Act, 12 P.S. §§ 1601 *et seq.*, and the Pennsylvania Survival Act, 20 Pa.C.S.A. §§ 3371 *et seq.* Philadelphia is not immune from suit. Phila.Code § 21–701; *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). Since these are police brutality cases, broad discovery will be available in the state courts. *See Tataran v. Little*, No. 1473, Nov. Term 1975 (C.P.Phila., Feb. 2, 1977).

## IV. *Do the Complaints charge violations of constitutional rights by the City?*

Assuming that civil rights actions for damages could be maintained against municipalities generally, these specific complaints against the City would be dismissed for failure to state a claim upon which relief can be granted. These are actions for deprivations of *constitutional* rights. The federal claims are not ordinary tort actions.[28] The alleged conduct of the City in each of these cases does not rise to the level of such deprivations.

### A. *Claims based on negligence*

The complaint in *Jones v. McElroy* bases the City's liability upon recklessness or negligence in hiring, training, and failing to terminate the employment of defendant police officer McElroy.[29]

The complaint in *Zuber v. Jones* predicates the civil rights liability of the City upon its negligence in the hiring, testing, and training of its police officers.[30] The complaint alleges no specific acts of negli-

gence on the part of the City, but during oral argument counsel asserted that since incidents of police brutality apparently are continuing in Philadelphia even though the City has been on notice of charges of police brutality for some time, the City has been negligent in failing to correct the problem.

It is clear that simple negligence will not serve as a basis for a claim of violation of civil rights under § 1983. As the Third Circuit stated in *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3d Cir. 1970):

"... an allegation of negligent conduct by a state public official is not sufficient, in and of itself, to bring a claim within section 1983. More is needed than a naked averment that a tort was committed under the color of state law; the wrongdoing must amount to a deprivation of a right, privilege, or immunity secured by the Constitution and the laws of the United States."

*See also Paul v. Davis,* 424 U.S. 693, 699–701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Howell v. Cataldi,* 464 F.2d 272, 278–79 (3d Cir. 1972).

---

**28.** Federal courts do not have the power to hear claims based exclusively upon state tort law unless there is diversity of citizenship. U.S.Const. Art. III, § 2; 28 U.S.C. § 1332. To circumvent this restriction, plaintiffs have invoked this court's power (Art. III, § 2; 28 U.S.C. §§ 1331(a), 1343(3)) to hear cases arising under the Constitution by alleging that the defendants' conduct deprived them of federal constitutional rights. Thus, what are essentially tort actions for assault, battery, and negligence have been transformed into civil rights actions for deprivations of the Fourteenth Amendment right to personal safety and security from unwarranted infliction of physical harm by the government and its agents. The distinction between common law torts and deprivations of constitutional rights remains nevertheless, and plaintiffs may not maintain civil rights actions unless the conduct of which they complain is of a constitutional magnitude. *See generally* Harvard Note, *supra,* at 952–54; *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

**29.** Paragraph 10 of the *Jones* complaint alleges:

"Defendant, CITY OF PHILADELPHIA, was wanton, reckless, careless and negligent in:

(a) employing as a law enforcement officer a person whom defendant knew or should have known had a reckless and violent disposition

and was, therefore, unfit to be so employed and whose employment as a law enforcement officer presented an unreasonable risk of harm to persons including plaintiff's decedent;

(b) failing to terminate the authority and employment of a law enforcement officer who defendant knew or should have known for the reason set forth above was unfit to be so employed;

(c) Failing to properly train defendant, THOMAS McELROY in the appropriate and lawful methods of law enforcement;

(d) failing to take appropriate measures to determine the fitness of defendant, THOMAS McELROY for employment as a law enforcement officer;

(e) failing to use due care under the circumstances."

**30.** The second count of the *Zuber* complaint, which avers deprivation of civil rights, alleges:

"Defendant, City of Philadelphia was directly negligent and careless in that it failed to establish and properly implement adequate guidelines and procedures for the hiring, testing and training of its police officers, and said defendant is further responsible under the Doctrine of [R]espondeat Superior for the acts and omission of its agent." Complaint ¶ 18. *See also id.* ¶¶ 15 (common law negligence claim), 25.

The question in these cases is whether these plaintiffs have charged the City with a degree of culpability sufficient to constitute a claim of constitutional deprivation.

The degree of culpability necessary for civil rights liability is an unsettled question. Most opinions discussing it are in § 1983 actions and it is unclear whether they reach their holding as an interpretation of that statute or on the basis of constitutional requirements. Since the claims against the City are asserted directly under the Fourteenth Amendment, § 1983 restrictions on civil rights actions are not necessarily dispositive, but cases decided under § 1983 are a useful starting point in determining the degree of culpability required.

In *Monroe v. Pape, supra,* 365 U.S. at 187, 81 S.Ct. at 484, the Supreme Court contrasted the civil provisions of § 1983 with the criminal provisions of the Civil Rights Act of 1866 (now 18 U.S.C.A. § 242) as follows:

"In [*Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)] we dealt with a statute that imposed criminal penalties for acts 'wilfully' done. We construed that word in its setting to mean the doing of an act with 'a specific intent to deprive a person of a federal right.' 325 U.S., at 103, 65 S.Ct. 1031, 1036. We do not think that gloss should be placed on § [1983] which we have here. The word 'wilfully' does not appear in § [1983]. Moreover, § [1983] provides a civil remedy, while in the *Screws* case we dealt with a criminal law challenged on the ground of vagueness. Section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions."

The Court thus held that a specific intent (purpose) to violate a constitutional right is not required in a § 1983 action; it did not address the question whether a general intent to commit certain acts—without regard to whether those acts were specifically intended to violate an individual's civil rights—was needed in a § 1983 action. *See Mullins v. City of River Rouge,* 338 F.Supp. 26, 29 (E.D.Mich.1972).

Some courts have relied on *Monroe* to base § 1983 liability on simple negligence rather than intent.[31] Other courts have limited negligence liability in § 1983 actions to "gross and culpable negligence" rather than "simple negligence or inadvertence."[32] This appears to be a criminal negligence standard. *See Jenkins v. Averett,* 424 F.2d 1228, 1231, 1232 (4th Cir. 1970) (citing criminal assault cases as basis for standard). The Third Circuit has recognized the possibility of a § 1983 action based upon "culpable negligence" (*Howell v. Cataldi, supra,* 464 F.2d at 279 & n. 11), but seems to have receded from that position in a recent opinion which indicates that intentional conduct is required (*see Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1080–82 (3d Cir. 1976)).

Aside from § 1983, recent Supreme Court opinions have suggested that intent, and possibly specific purpose, is needed to constitute a constitutional violation. For example, the Court has held that a purpose to discriminate is a required element of a violation of the Equal Protection Clause (*Village of Arlington Heights v. Metropolitan Housing Development Corp.,* —— U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)), and that "deliberate indifference to serious medical needs", rather than mere negligence, is needed to establish a violation of the cruel and unusual punishment aspect of the Fourteenth Amendment's Due Process Clause based upon inadequate medical care (*Estelle*

**31.** *See, e. g., Navarette v. Enomoto,* 536 F.2d 277, 281–82 (9th Cir. 1976), *cert. granted,* —— U.S. ——, 97 S.Ct. 783, 50 L.Ed.2d 776 (1977); *Carter v. Carlson,* 144 U.S.App.D.C. 388, 447 F.2d 358 (1971), *rev'd on other grounds,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *cf. Moon v. Winfield,* 368 F.Supp. 843 (N.D.Ill. 1973), *supplemented,* 383 F.Supp. 31 (N.D.Ill. 1974).

**32.** *See, e. g., Jenkins v. Averett,* 424 F.2d 1228, 1231–33 (4th Cir. 1970); *Reed v. Philadelphia Housing Authority,* 372 F.Supp. 686, 689–92 (E.D.Pa.1974).

*v. Gamble,* 429 U.S. 97, ——, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)).[33]

■ On the basis of these precedents, I conclude that negligence will not support an action for deprivation of constitutional rights, whether that action is asserted under § 1983 or directly under the Fourteenth Amendment. Despite use of such words as "wanton" and "reckless," plaintiffs' allegations in these actions amount to no more than averments of simple negligence on the part of the City in its methods of hiring, training and supervising its policemen, and they fail to state claims of violation of constitutional rights.

### B. *Claims based on intent*

In addition to the negligence theories, plaintiff in *Jones v. McElroy* bases the City's liability upon the allegation in ¶ 11 of the complaint that:

"The defendants, separately and/or in concert, acted willfully, knowingly, and purposely with the specific intent to deprive plaintiff and plaintiff's decedent of rights secured by the Fourteenth Amendment to the Constitution of the United States."

If sufficiently alleged, this paragraph would state a claim for deprivation of constitutional rights, but no factual allegations are made in support of this specific intent contention.

■ The Third Circuit has held that facts supporting an allegation of deprivation of constitutional rights must be pleaded with specificity.[34] The rationale underlying this rule was stated in *Valley v. Maule,* 297 F.Supp. 958, 960–61 (D.Conn. 1968), *quoted with approval in Kauffman v. Moss,* 420 F.2d 1270, 1276 n. 15 (3d Cir.),

*cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970):

"As a general rule notice pleading is sufficient, but an exception has been created for cases brought under the Civil Rights Acts. The reason for this exception is clear. In recent years there has been an increasingly large volume of cases brought under the Civil Rights Acts. A substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants— public officials, policemen and citizens alike—considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims."

■ The allegation in *Jones* that the City acted with the specific intent to deprive plaintiff and her son of their constitutional rights does not meet the requirements of the specific pleading rule. The complaint is devoid of any factual allegations to support the conclusory charge of intentional conduct by the City. The claim against the City for intentional deprivation of rights will therefore be dismissed.

### C. *Claims based on vicarious liability*

The main theory upon which the City's liability is predicated in each of these cases is vicarious liability for the police officers' acts under the *respondeat superior* doctrine.

Like the degree of culpability question discussed above, the question whether vicarious liability may be imposed upon a municipality is clouded by § 1983 jurisprudence. For example, in *Moor v. County of Alameda, supra,* the Supreme Court held

---

**33.** Although *Estelle* was a § 1983 case, the Court's language indicates that intent is a constitutional requirement rather than merely an element of § 1983. The Third Circuit seems to follow a similar analysis in *Hampton, supra.*

**34.** *Curtis v. Everette,* 489 F.2d 516, 520–21 (3d Cir. 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974) (allegation that defendants acted "intentionally, wilfully and recklessly" in failing to provide adequate train-

ing and supervision of prison guards); *Esser v. Weller,* 467 F.2d 949 (3d Cir. 1972) (per curiam); *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3d Cir. 1970) (allegation of negligent and improper medical treatment in prison); *Kauffman v. Moss,* 420 F.2d 1270, 1275–76 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn,* 379 F.2d 213 (3d Cir. 1967).

that vicarious liability could not be imposed upon municipalities through the state law incorporation provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1988, because to do so would conflict with § 1983's municipal exclusion from liability. Yet, some courts, by applying state tort concepts, have imposed vicarious liability under § 1983,[35] although most have not.[36] The Third Circuit has joined the courts not recognizing vicarious liability in § 1983 actions. *See Hampton, supra,* 546 F.2d at 1082.[37]

■ The policy factor favoring vicarious liability is that it would provide a "deep pocket" out of which a judgment could be paid and it would impute liability for police officer wrongdoing to the entity which placed the officer in the position to commit the constitutional violation. *See, e. g., Williams v. Brown,* 398 F.Supp. 155 (N.D.Ill. 1975). However desirable that result might be, it is, nevertheless, inadvisable to stray from the scheme enacted by Congress to enforce Fourteenth Amendment rights. In that scheme, Congress has emphasized personal responsibility and blameworthiness (*see, e. g., Veres v. County of Monroe,* 364 F.Supp. 1327, 1331 (E.D.Mich.1973); *cf. Monroe v. Pape, supra,* 365 U.S. at 187, 81 S.Ct. 473), and it is in that context that the Third Circuit and other courts have refused

to apply vicarious liability under the doctrine of *respondeat superior* to § 1983 actions. I believe that the Third Circuit would make the same ruling in actions asserted directly under the Fourteenth Amendment. *Cf. Crosley v. Davis, supra,* at 392–93 & n. 11. The claims against the City based upon vicarious liability, therefore, fail to state a claim upon which relief can be granted.

## V. *Pendent claims against the policemen and the City*

■ In addition to their federal civil rights claims, plaintiffs in both of these cases assert pendent state tort law claims against the police officers based upon assault, battery, and negligence.[38] Since the federal and state claims against the policemen "derive from a common nucleus of operative fact," I have the constitutional power to hear all of them, but whether to do so is a matter of discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The assault and battery claims are essentially identical to the federal civil rights claims, and I, therefore, will exercise pendent jurisdiction over the assault and battery claims against the policemen. As for the negligence claims, although they

35. *See, e. g., Carter v. Carlson,* 144 U.S.App. D.C. 388, 447 F.2d 358, 370 & n. 39 (1971), *rev'd on other grounds,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). *See also Hill v. Toll,* 320 F.Supp. 185, 188–89 (E.D.Pa.1970), Some courts, rather than utilizing a uniform rule of federal common law, adopt the law of the forum state in determining whether to impose the doctrine. *See, e. g., Navarette v. Enomoto,* 536 F.2d 277, 282 (9th Cir. 1976), *cert granted,* —— U.S. ——, 97 S.Ct. 783, 50 L.Ed.2d 776 (1977); *Hesselgessor v. Reilly,* 440 F.2d 901 (9th Cir. 1971); *Madison v. Gerstein,* 440 F.2d 338, 341–42 (5th Cir. 1971). In light of *Moor, supra,* the validity of this latter approach is questionable. *But see Navarette, supra,* at 282.

36. *See, e. g., Johnson v. Glick,* 481 F.2d 1028, 1033–34 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973); *Jennings v. Davis,* 476 F.2d 1271, 1274–75 (8th Cir. 1973); *Adams v. Pate,* 445 F.2d 105, 107 & n. 2 (7th Cir. 1971); *Padover v. Gimbel Bros., Inc.,* 412 F.Supp. 920, 922–23 (E.D.Pa.1976); *Thompson v. Montemuro,* 383 F.Supp. 1200, 1208 (E.D.Pa. 1974); *Downs v. Dept. of Public Welfare,* 368

F.Supp. 454, 463–65 (E.D.Pa.1973); *Ammlung v. City of Chester,* 355 F.Supp. 1300, 1305–06 (E.D.Pa.1973), *aff'd,* 494 F.2d 811 (3d Cir. 1974); *Veres v. County of Monroe,* 364 F.Supp. 1327, 1331–32 (E.D.Mich.1973); *Sanberg v. Daley,* 306 F.Supp. 277, 278 (N.D.Ill.1969); *Salazar v. Dowd,* 256 F.Supp. 220, 223 (D.Colo. 1966). *See also Dunham v. Crosby,* 435 F.2d 1177, 1179–80 (1st Cir. 1970).

37. Previous opinions of the Court seem to have left the issue open. *See Goode v. Rizzo,* 506 F.2d 542, 550 (3d Cir. 1974), *rev'd on other grounds,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Bracey v. Grenoble,* 494 F.2d 566, 570 (3d Cir. 1974). The Court had held, however, that vicarious liability would not support an award of punitive damages under § 1983. *Fisher v. Volz,* 496 F.2d 333, 349 (3d Cir. 1974).

38. The claims in *Jones v. McElroy* are brought under the Pennsylvania Wrongful Death Act, 12 P.S. §§ 1601 *et seq.,* and the Pennsylvania Survival Act, 20 Pa.C.S.A. §§ 3371 *et seq.*

"derive from a common nucleus of operative fact" (*Gibbs, supra,* at 725, 86 S.Ct. at 1138), the theories are so inconsistent and incompatible with civil rights claims that they will serve to confuse the jury, and I therefore decline to entertain the negligence claims.

Plaintiffs in both of these cases also assert pendent state tort claims against the City, seeking to hold it vicariously liable for the tortious actions of the police officers. These claims also derive from the same "nucleus of operative fact" (*Gibbs, supra,* at 725, 86 S.Ct. 1130), but in light of the municipal exclusion from liability in civil rights actions, I question whether I have the jurisdictional power to hear them, even though jurisdiction is based upon § 1331(a). *See Aldinger v. Howard, supra.* Even assuming that I have that power, however, the municipal exclusion from liability and the dismissal of the civil rights claims against the City in these actions lead me to conclude that entertaining the state claims against the City under pendent jurisdiction would be an improper exercise of my discretion under *Gibbs,* which cautioned that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well" (*Gibbs, supra,* at 726, 86 S.Ct. at 1139 (footnote omitted)).

Finally, plaintiffs in these cases assert pendent claims against the City for negligence in hiring, training, and supervision of its police force. In my view, these claims do not derive from the same operative facts as the federal claims against the police officers. The federal claims deal with very simple issues—whether the policemen acted properly or improperly, from a civil rights point of view, in their dealings with plaintiffs. The negligence claims against the City deal with totally different facts and a vastly expanded trial involving the City's methods of recruitment, training, and supervision, not only of the defendant police officers, but of all other members of the police force. Inevitably the City's program will be drawn into comparison with that of other municipalities for a determination of what is a "reasonable" or "acceptable" method of recruitment, training, and supervision. Finally there would remain the very interesting question whether the City's deficiencies, if any, were a proximate cause of the harm to plaintiffs. Under the test of *Gibbs,* the negligence claims against the City do not derive from a common nucleus of facts and should not be heard as a pendent matter. If it is a matter committed to my discretion, I decline to exercise it in favor of entertaining those claims.